# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADAM EUGENE MARTIN, | |
| Petitioner, | NO. 3:11-837 |
| v. | (JUDGE CAPUTO) |
| WARDEN MARTINEZ, | (MAGISTRATE JUDGE MANNION) |
| Respondent. | |

## **MEMORANDUM**

Before the Court is Magistrate Judge Mannion's report and recommendation ("R&R") (Doc. 11) on petitioner Martin's writ of habeas corpus petition brought under 28 U.S.C. § 2241 along with Mr. Martin's objections (Doc. 12). Mr. Martin argues that he is entitled to relief under § 2241 because collusion between the FBI and state authorities was tantamount to double jeopardy. He also claims new evidence showing the FBI threatened witnesses in his trial and withheld exculpatory evidence prove he was actually innocent. The magistrate judge recommended the petition be denied because the stringent requirements of § 2241 had not been met. The Court agrees and will deny the petition.

## **BACKGROUND**

Mr. Martin is challenging his 2004 convictions in the United States District Court for the Western District of Texas on bank robbery charges. He is currently serving eight concurrent life sentences on those convictions. The petitioner filed a direct appeal of the judgment of conviction in the United States Court of Appeals for the Fifth Circuit which was affirmed by decision dated December 2, 2005. *United States v. Martin*, 431 F.3d 846 (5th Cir. 2005). A petition for writ of certiorari was denied by the United States Supreme

Court on April 3, 2006. *Martin v. United States*, 547 U.S. 1059 (2006).

The Mr. Martin filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. §2255, which was denied by the trial court on May 24, 2006. *See Martin v. Outlaw*, 2007 WL 1138830 (E.D.Tex.).

Mr. Martin then filed a petition for writ of habeas corpus pursuant to §2241 in the Eastern District of Texas in which he asserted that he was unlawfully confined because the federal government did not have a waiver of jurisdiction from the state and he was, therefore, innocent. *Martin v. Outlaw*, *supra*. By memorandum order dated April 17, 2007, that petition was dismissed as having been inappropriately brought pursuant to §2241. *Id.*

Mr. Martin proceeded to file a second §2241 petition in the United States District Court for the Northern District of West Virginia on January 26, 2009, in which he claimed: (1) the government withheld exculpatory DNA evidence, violating his 5th, 6th, and 8th amendment rights and that he was innocent of all charges; (2) the FBI requested his arrest until completion of the federal investigation, violating his 5th, 6th, and 8th amendment rights and his right to due process; and (3) the government violated Title 18 U.S.C. §3000 by withholding DNA tests done by a state lab in violation of his right to due process. *Martin v. Cross*, 2009 WL 1034497 (N.D.W.Va.). By order dated April 16, 2009, the second petition was also dismissed as inappropriately being brought pursuant to §2241. *Id.*

On an unspecified date, Mr. Martin sought DNA testing in the district court which was denied. The petitioner moved to proceed *in forma pauperis* in the Fifth Circuit. The Fifth Circuit denied Mr. Martin's request to proceed *in forma pauperis* and dismissed the

appeal as frivolous noting that the evidence of Mr. Martin's guilt was overwhelming and included testimony from the petitioner's co-defendants regarding his participation in the robberies, as well as letters written by the petitioner that amounted to a confession. The court further found that Mr. Martin had made no attempt to explain how DNA testing would raise a reasonable probability that he did not commit the bank robbery offense so as to satisfy the requirements of 18 U.S.C. §3600. *United States v. Martin*, 377 Fed. Appx. 395 (5th Cir. 2010). Mr. Martin filed a petition for writ of certiorari which was denied by the United States Supreme Court on October 4, 2010. *Martin v. United States*, 131 S.Ct. 357 (2010).

On May 3, 2011, Mr. Martin filed the instant habeas petition in which he argues that he can establish that he is actually innocent pursuant to the provisions of *Schlup v. Delo*, 513 U.S. 298 (1995). In support of his contention, Mr. Martin argues that he was subjected to double jeopardy in that he was originally indicted and held by the State of Texas on charges of robbing the Surety Bank in New Braunfels, Texas, but that the state charges were dismissed when he was subsequently indicted on federal charges in relation to the robberies. Mr. Martin argues that the FBI asked the State to charge and detain him pending completion of their investigation and that the state charges were therefore a "sham." Mr. Martin argues that the "reckless FBI investigation" led to his illegal detention.

In addition to the double jeopardy claim, Mr. Martin argues, without more, that the government openly threatened the petitioner and his brother; used tainted witnesses to obtain his conviction; and withheld three pieces of exculpatory evidence which violated his right to due process.

In his R&R, Magistrate Judge Mannion recommended Mr. Martin's petition be

3

denied because he failed to show he was entitled to relief under § 2241's stringent standards. Mr. Martin's objections reiterated the arguments of his petition.

## STANDARD OF REVIEW

Where objections to the magistrate judge's report are filed, the Court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In making its *de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the statute permits the Court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the Court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

## DISCUSSION

The Court will adopt the Magistrate Judge's R&R and deny the petition.

§ 2241 is a narrowly carved remedy to the pleading strictures of § 2255. It is usually only allowed where a petitioner alleges *actual* innocence due to an intervening change in the law. *See In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir.1997).

Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A "safety valve" provision allows challenges to a conviction or sentence in certain narrow circumstances via the federal courts' § 2241 jurisdiction when a prisoner can show that § 2255 is "inadequate or ineffective to test the legality of his detention." § 2255(e). The safety valve provision was not amended by AEDPA. Section 2241 states that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district court and any circuit judge within their respective jurisdictions" to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a),(c)(3).

In *In re Dorsainvil*, the Third Circuit interpreted the statutory language providing that § 2255 must be used to raise a challenge to the validity of a conviction or sentence unless that section is "inadequate or ineffective." *Dorsainvil*,119 F.3d at 251. In that case, the appellant was in the "unusual position" of having no prior opportunity to challenge his conviction for a crime that an intervening change in substantive law could negate with retroactive application. *Id.* The Third Circuit therefore allowed the § 2241 petition to go forward since a subsequent change of law made the conduct the appellant was convicted of no longer criminal. *Id.* at 251-52. In the narrow circumstances the appellant in that case faced, the *Dorsainvil* court held that § 2255 was inadequate to test the legality of his detention. *Id.* at 251.

The double jeopardy clause of the Fifth Amendment "bars any subsequent prosecution in which the government, to establish an essential element of an offense

5

charged in that prosecution, will prove conduct that constitutes an offense for which the defendant already has been prosecuted." *Grady v. Corbin*, 495 U.S. 508 (1990). Double jeopardy scrutiny is appropriate when there are "successive prosecutions arising from virtually the same conduct involving the same actors and overlapping time frames." *U.S. v. Felix*, 926 F.2d 1522, 1531 (10th Cir. 1991). It is well established, however, that a subsequent federal prosecution based upon the same conduct as a terminated state prosecution does not violate the double jeopardy clause of the fifth amendment. *Abbate v. United States*, 359 U.S. 187 (1959). The dual sovereignty doctrine rests upon the notion that laws of separate sovereigns are indeed separate and that one act may violate the laws of each. Accordingly, prosecution by each cannot be for the same offense and double jeopardy concerns are not implicated. *Heath v. Alabama*, 474 U.S. 82, 88 (1985).

In *Bartkus v. Illinois*, 359 U.S. 121 (1959), the Supreme Court held that successive state and federal prosecutions are constitutionally permissible because every citizen of the federal government is also a citizen of a state and both sovereigns have authority to punish individuals for infractions of the law. *Bartkus*, 359 U.S. at 131-32. The Court noted that the successive prosecutions before it did "not sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution." *Id.* at 124.

Following the Supreme Court's remark in *Bartkus*, many courts have inferred that a possible exception to the dual sovereignty rule might exist where a federal or state prosecution was merely a tool manipulated by the other sovereign to revive a prosecution barred on federal constitutional grounds. *See United States v. Bernhardt*, 831 F.2d 181

(9th Cir.1981) (district court determined that jeopardy had attached in state prosecution). Accordingly, courts have considered double jeopardy claims that: (1) federal prosecutors have manipulated state processes rendering the state prosecution a sham and a cover for an otherwise barred federal prosecution, *see, e.g.*, *United States v. Russotti*, 717 F.2d 27, 30-32 (2d Cir.1983), *cert. denied*, 465 U.S. 1022 (1984) and (2) state prosecutors have manipulated federal processes rendering the federal prosecution a sham and a cover for an otherwise barred state prosecution, *see, e.g., Bernhardt*, 831 F.2d at 182.

In *Bernhardt*, defendants were charged with conspiracy and misapplication of bank funds. Fearing dismissal of the case in state court, Stephen Mayo, the Special State of Hawaii Deputy Attorney General, contacted the U.S. Attorney to undertake a federal prosecution. There had been no prior federal involvement in the case. The U.S. Attorney agreed to prosecute with the understanding that Mayo would be the head attorney. He was then made a Special Assistant U.S. Attorney and lead counsel on the matter. Defendants then moved to dismiss on double jeopardy and other grounds. In arguing that the *Bartkus* exception applied because the federal prosecution was a "sham," defendants pointed to: (1) Mayo's lead role in both proceedings, (2) the state's funding of both proceedings, (3) the federal government's lack of interest in the case prior to discussions with Mayo, (4) and the absence of a "federal interest" in the prosecution of the defendants. The district court agreed and granted the motion.

On appeal, the Tenth Circuit, while emphasizing that the *Bartkus* exception does not bar cooperation between prosecuting sovereignties, agreed with the district court that the circumstances of the case were "troubling." *Bernhardt*, 831 F.2d at 182. But the

7

Tenth Circuit disagreed that they were sufficient as a matter of law to invoke the "narrow exception" to the dual sovereignty doctrine. *Id.* at 183.  In reversing and remanding the case for further factual determination, the court concluded that it was, "possible that the involvement of the federal authorities once the decision was made to prosecute the Bernhardts may be sufficient to remove this case from the 'shams' and 'covers' that *Bartkus* reaches." *Id.* at 183.

Finally, "[t]o establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence . . . it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. U.S.*, 523 U.S. 614, 623 (1998) (internal citations omitted). Given the threat to principles of finality and comity that claims of actual innocence pose, such claims require petitioner, "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  "[C]laims of actual innocence are rarely successful," and "in virtually every case, the allegation of actual innocence has been summarily rejected." Schlup, 513 U.S. at 324 (citation omitted).

Here, Mr. Martin has made no showing that his petition meets the strict requirements of § 2241.  His main argument is that his federal prosecution following the dismissal of his state charges amounted to double jeopardy.  In support of this argument, he has submitted a letter from the FBI to the New Braunfels Police Department ("NBPD"). The letter commends them for their investigations into the bank robberies for which Mr. Martin was convicted.  The letter mentions that, "[a]t the request of the FBI, the NBPD obtained State arrest warrants for Adam Martin [redacted] pending the completion of a

federal investigation." Mr. Martin argues this statement proves that the state case was simply a sham to buy the federal officials time while they put their case together. But this argument misunderstands the nature of the *Bartkus*, or sham, exception to the dual sovereignty doctrine. That exception, in part, prohibits a state prosecution from being a tool manipulated by the federal sovereign to revive a prosecution that would *otherwise be barred* on federal constitutional grounds. The sham exception basically refers to bringing a *second* prosecution in the guise of the other sovereign, be it state or federal. The exception is not met to prohibit or discourage legitimate cooperation between federal and state authorities. No manipulation has been alleged, only cooperation.

The facts here are a long way from *Bernhard*, where the federal case was apparently brought solely to give the state attorney general another crack at securing a conviction against the defendants. While the federal interest there could arguably have been considered a sham, the interest here was real. The FBI asked the NBPD to obtain state arrest warrants *in order for* the FBI to further develop its investigation. While the use of the state was instrumental, both authorities had a real and independent interest in prosecuting the bank robberies and legitimately worked together to achieve that end.

Additionally, Mr. Martin has failed to provide any new reliable evidence establishing his innocence under *Schulp*. He submits an affidavit from his brother in which his brother states that he was intimidated and threatened by the Assistant U.S. Attorney to testify "right." He also alleges that exculpatory evidence was withheld, without more. These vague allegations do not come close to reaching the high standard for establishing innocence under *Schlup* and its progeny.

**CONCLUSION**

The Magistrate Judge's R&R will be adopted and Mr. Martin's petition will be dismissed. His double jeopardy and actual innocence arguments fail to meet the standards for relief under § 2241 established by *Dorsainvil* and *Schulp*.

An appropriate order follows.


| | |
|---|---|
| /1/18/12 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ADAM EUGENE MARTIN, | |
| Petitioner, | NO. 3:11-837 |
| v. | (JUDGE CAPUTO) |
| WARDEN MARTINEZ, | |
| Respondent. | (MAGISTRATE JUDGE MANNION) |

## **ORDER**

**NOW**, this ___18th___ day of January, 2012, **IT IS HEREBY ORDERED THAT** Magistrate Judge Mannion's R&R (Doc. 11) is **ADOPTED**. Mr. Martin's motion to proceed *in forma pauperis* is **GRANTED** and and his petition for writ of habeas corpus (Doc. 1) is **DISMISSED**. Also, his motion to amend his petition (Doc. 21) is **DENIED** as moot. The Clerk of Court is directed to mark the case as **CLOSED**.

                                                            /s/ A. Richard Caputo
                                                            A. Richard Caputo
                                                            United States District Judge